IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TAGGET WILLIAMS, | ) |
| | ) |
|    Petitioner, | ) |
| | ) |
| v. | )   CASE NO. 2:21-CV-549-RAH-CSC |
| | ) |
| WESLEY FITCH, UNITED STATES | ) |
| PROBATION OFFICER, NORTHERN | ) |
| DISTRICT OF GEORGIA, | ) |
| | ) |
|    Respondent. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    INTRODUCTION**

Pro se Petitioner Tagget Williams filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 while on home confinement in Harvest, Alabama.[1] Petitioner alleges the Bureau of Prisons ("BOP") failed to apply time credits he earned under the First Step Act

---

[1] Petitioner originally filed this habeas petition on December 28, 2020, in the United States District Court for the Northern District of Alabama. The court in the Northern District recommended the petition be transferred to this Court upon a determination that when Petitioner filed this action, he was incarcerated at the federal prison camp in Montgomery, Alabama. *See* Doc. 2. Over Petitioner's objection to the transfer, in which he argued he had been residing in the Northern District since October 27, 2020 (Doc. 4), the court ordered the transfer of Petitioner's case concluding that he resided in Middle District of Alabama at the time he filed his habeas application. *See* Doc. 6. Although Petitioner been transferred on September 20, 2020, to a residential reentry center in Birmingham, Alabama, and then placed on home confinement on October 29, 2020, in Harvest, Alabama, the Residential Reentry Manager over Alabama is based in Montgomery, and therefore, this Court had jurisdiction over Petitioner's custodian at the time Petitioner filed his application for habeas relief. *See* Doc. 22 at 1–2. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004).

("FSA")[2] following his successful completion of a 9-months evidence-based recidivism reduction program. Doc. 1 at 7. Because the amount of good time credits requested (135 days) was greater than the amount of time remaining on Petitioner's term of imprisonment when he filed this case, he requests that outstanding or unused time credits be applied to reduce his term of supervised release. Doc. 1.

## II.     FACTUAL BACKGROUND

Petitioner entered a guilty plea in the United States District Court for the Eastern District of Louisiana to conspiracy to possess with intent to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A). Doc. 21-1 at 2–3. The district court sentenced Petitioner on February 7, 2019, to a mandatory-minimum ten-year term of imprisonment but subsequently reduced Petitioner's prison term to 62 months making his statutory release date on or about April 9, 2022, followed by a five-year term of supervised release. *Id.* On April 9, 2021, the BOP released Petitioner to begin the supervised release term of his sentence. *Id.*

## III.    PROCEDURAL HISTORY

Respondent filed an Answer and supporting evidentiary materials arguing, *inter alia,* the petition is due to be dismissed because Petitioner did not exhaust his available administrative remedies through the BOP before filing his petition. Doc. 21 at 8–11; Docs. 21-2 through 21-4. In a supplemental answer Respondent maintains the petition is due to be denied because the BOP applied earned time credits to Petitioner's sentence to shorten

---

[2] *See* First Step Act of 2018, PL 115–391, December 21, 2018, 132 Stat. 5194.

2

his detention resulting in his release on April 9, 2021, one year earlier than his statutory projected release date of April 9, 2022. Doc. 22 at 3–4; Doc. 22-1 at 1–3. Respondent further maintains that the FSA does not authorize the BOP or the courts to apply earned time credits to shorten a term of supervised release. Doc. 22 at 3–4. The Court granted Petitioner an opportunity to respond (Doc. 23), and he did so (Doc. 24). The petition is ripe for review.

IV.   **DISCUSSION**

   A.   **Jurisdiction & Venue**

The law is settled that a 28 U.S.C. § 2241 petition for writ of habeas corpus is the proper vehicle for a prisoner to challenge the manner, location, or execution of his sentence. *Lopez v. Davis*, 531 U.S. 230, 236 (2001); *McCarthen v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1092-93 (11th Cir. 2017); *Williams v. Pearson*, 197 F. App'x 872, 877 (11th Cir. 2006). Petitioner's habeas application challenges the BOP's conduct about the calculation of sentencing credits under the FSA and those claims are considered proper under the procedural mechanism of 28 U.S.C. § 2241. Venue is likewise proper because Petitioner's custodian was located in this district when he filed the petition. *See e.g., Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) (holding that a 28 U.S.C. § 2241 petition for habeas corpus relief generally must be brought in the district court where the inmate is incarcerated.); *Brown v. Warden of FCI Williamsburg*, No. 8:19CV00546-HMH-JDA, 2019 WL 1780747, at *2 (D. S.C. Mar. 25, 2019), *report and recommendation adopted*, No. CV 8:19-546-HMH-JDA, 2019 WL 1773382 (D. S.C. Apr. 23, 2019) (finding that a § 2241 petition must be brought against the warden of the facility where the prisoner

3

is being held and in the district of confinement rather than in the sentencing court) (*citing* 28 U.S.C. § 2242 and *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989)).

    **B.    Exhaustion of Remedies**

Respondent argues that Petitioner's challenge to the amount of FSA credits awarded him by the BOP is subject to dismissal for Petitioner's failure to exhaust administrative remedies. Doc. 21 at 8–11. Assuming Petitioner's time crediting claim is not moot, it fails for lack of exhaustion.

It is well established that a federal prisoner who seeks habeas corpus relief under 28 U.S.C. § 2241 "must [first] exhaust his available administrative remedies before he can obtain relief [from this court in a habeas action]." *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) (*citing Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). Although "the administrative-exhaustion requirement was judge-made, rather than jurisdictional . . . [t]he [administrative] exhaustion requirement is still a requirement; it's just not a jurisdictional one." *Davis*, 661 F. App'x at 562 (quotation marks and citation omitted). "[T]he benefits of [requiring] exhaustion … include allowing a prison to address complaints about the program[s] it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (citations omitted). "In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules." *Davis*, 661 F. App'x at 562 (*citing Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006))

4

(addressing the exhaustion requirements of the Prison Litigation Reform Act governing inmate civil rights actions).

The U.S. Attorney General, acting through the BOP, administers a federal defendant's sentence and has the authority to determine what credit, if any, is due a prisoner for time served. *See Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995); *United States v. Lucas*, 898 F.2d 1554, 1555-56 (11th Cir. 1990). A prisoner seeking credit against his sentence for time in custody must exhaust BOP administrative remedies prior to filing a § 2241 habeas petition in federal court. *Rodriguez*, 60 F.3d at 747; *see also United States v. Nyhui*s, 211 F.3d 1340, 1345 (11th Cir. 2000) (holding that "[a] claim for credit for time served is brought under 28 U.S.C. § 2241 after the exhaustion of administrative remedies.").

Respondent submitted the Declaration of J. Latease Bailey, Consolidated Legal Center Leader/Supervisory Attorney for the BOP, detailing the formal administrative remedies available to Petitioner and his failure to properly exhaust these remedies. *See* Doc. 22-5. Ms. Bailey states the BOP provides a specific administrative remedy procedure through which inmates can present claims regarding their confinement to prison officials. *Id.*; *see* 28 C.F.R. § 542.10, et seq. Pursuant to the administrative process, an inmate must first present any issue relating to any aspect of their confinement to the warden of the facility where the inmate is detained by utilizing a form BP-9. *See* 28 C.F.R. § 542.13(a), 14(a). If the inmate is dissatisfied with the warden's response, further review is available by the BOP's regional director. *See* 28 C.F.R. § 542.15. If the inmate is not satisfied with the response from the regional director, the inmate can seek review with the BOP's Office

of General Counsel utilizing a BP-11 form. *Id.*; *see also* Doc. 22-5 at 1–2. A final decision from the Office of General Counsel completes the BOP's administrative review procedure. Doc. 22-5 at 2; *see also* 28 C.F.R. § 542.15(a). If an inmate does not receive a response within the time allowed for a reply, including extension, the inmate may consider the lack of a response to be a denial at that level. *See* 28 C.F.R. § 542.18.

In her Declaration, Ms. Bailey testifies she reviewed the Sentry[3] records, including the administrative remedy log for Petitioner regarding his request for 135 days of good time credit. Doc. 22-5 at 2. Pursuant to that review, Ms. Bailey states as follows:

> [] I have reviewed Sentry records, including the administrative remedy log for inmate Tagget Williams, reg. no. 12175-017, … [regarding] Petitioner['s] request[] [for] 135 days of good time credit.
>
> [] According to Sentry Housing records, Petitioner was housed at FPC Montgomery until September 10, 2020. At that time, he was transferred to a Residential Reentry Center (RRC, or Halfway house) until October 29, 2020, when he was placed on home confinement. He was released from his sentence on April 9, 2021 via 362l(e) release.
>
> [] Petitioner participated in the Residential Drug Abuse Program (RDAP) and was deemed eligible for the up to one year off his sentence for successful completion of the program under Title 18 USC §3621(e).
>
> [] The program is covered in BOP's program statement 5330.11, Psychology Treatment Programs, Chapter 2, Drug Abuse Programs. According to that program statement, the classes Petitioner cites were necessary and must be completed for Petitioner to receive the up to one year off his sentence. See Section 2.7 Community Transitional Drug Abuse Treatment Program (TDAT).

---

[3] Sentry is a computerized record system which contains electronic records for tracking the Administrative Remedy Program. Doc. 21-2 at 2. Sentry tracks prisoner remedy requests and responses to those requests. *Id.*

6

> [] As a result of successfully completing the RDAP program, Petitioner was released from his sentence on April 9, 2021, instead of his statutory release date of April 9, 2022.
>
> [] Further, according to the Petitioner's Administrative Remedy Log (Attachment A - Administrative Remedy Log), he filed remedy no. 1039081-Fl, 1039081-Al, and 1039081-A2, requesting 135 days of time credits. 1039081-Fl was closed and denied. Instead of appealing to the regional level, Petitioner sent the appeal to the BOP's Central Office. These remedies, 1039081-Al and 1039081-A2, were rejected. Petitioner was informed that he filed at the wrong level; told to correct the defect and refile at the correct level. There is no evidence of the inmate ever correcting this defect.

Doc. 22-5 at 2–3 (footnote omitted); *see also* Doc. 21-4 at 16–18.

In this case, the relevant administrative filing Petitioner submitted was unexhausted. After Petitioner's remedy request regarding FSA credits, Remedy 1039081-Fl, was denied, there is no record an appeal was filed at the regional level. Doc. 21-4 at 16–18. Rather, Petitioner submitted two appeals to the Central Office and both appeals were denied with instructions that Petitioner refile his submission at the correct level. *Id.* at 17–18; *see also* Doc. 24 at 7; Doc. 24-12. It is undisputed that Petitioner failed to do so. *Id.* Thus, Petitioner failed to satisfy the requirement that he exhaust available remedies before seeking habeas corpus relief in this Court and no circumstances have been presented which justify waiver of the exhaustion requirement.[4]

---

[4] *See Covell v. Scibana*, 21 F. App'x 291, 293 (6th Cir. 2001) (holding that an inmate who had been released from BOP custody was still required to exhaust his administrative remedies because "the Administrative Remedy Program applies to former inmates for issues that arose during their confinement"); *Peete v. United States*, No. 2:23-CV-10137, 2023 WL 2472623, at *2 (E.D. Mich. Feb. 13, 2023) (finding that a prisoner on supervised release was required to exhaust his administrative remedies before pursuing a § 2241 claim for a reduced term of supervised release under the First Step Act.); *Gratton v. Dismas Charities, Inc.*, No. 3:20-00509, 2021 WL 4163992, at *5 (M.D. Tenn. Aug. 20, 2021), *report and recommendation adopted*, No. 3:20-CV-00509, 2021 WL 4149126 (M.D. Tenn. Sept. 13, 202121)) ("[Petitioner argues] it would be futile to pursue exhaustion because he is past his release date.... [T]he possibility of Petitioner's continued pursuit

### C. Delayed Application of FSA Credits

In the event Petitioner claims the BOP improperly delayed awarding him earned time credits under § 3621 following his completion of a 9-months evidence-based recidivism reduction program (*see* Doc. 24 at 2–6), he is not entitled to habeas relief. Citing *Goodman v. Ortiz,* No. CV 20-7582 (RMB), 2020 WL 5015613 (D. N.J. Aug. 25, 2020), Petitioner claims the BOP was required to apply 135 days of his earned time credits before the 2-year phase-in deadline of January 15, 2022.[5] Doc. 24 at 4–5.

As explained, the FSA was signed into law On December 21, 2018, and gave the BOP, among other things, authority to create a program that rewarded prisoners who successfully completed recidivism reduction programming. *See* Doc. 21 at 2–4. These rewards included, but were not limited to, the accrual of federal time credits that could be applied to an inmate's early transfer to prerelease custody or supervised release. *Id.* The FSA provided that "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system." *Id*. The Attorney General met that

---

of an administrative remedy exists given that the remedies provided by 28 C.F.R. §§ 542.13–542.15 may be pursued by 'former inmates for issues that arose during their confinement.'"); *see also* 28 C.F.R. § 542.10(b).

[5] In *Goodman*, the court interpreted the FSA as requiring a "2-year phase-in, not only of participation in the program, but of incentives for participation in the programs." *Goodman*, 2020 WL 5015613 at * 6. Based on this interpretation, the court in *Goodman* went on to conclude that "the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as [Goodman]." *Id*.

deadline by publicly releasing a risk and needs assessment system on July 19, 2019.[6] *Id.* The FSA also gave the BOP two years after completion of the risk and needs assessment for each prisoner—until January 15, 2022—to "phase-in" the program implementation. *Id.*; *see also* 18 U.S.C. § 3261(h)(2)(A). That 2-year phase-in date had not expired when Petitioner filed his habeas petition.

Respondent's supplemental answer reflects that Petitioner successfully completed the Residential Drug Abuse Treatment Program (RDAP), and the BOP applied the maximum amount of time credits under the FSA to shorten his prison term by one year pursuant to 18 U.S.C. § 3621(e). Docs. 22 at 3; 22-1 at 1, 3. Even though the BOP was not required to calculate and apply federal time credits until after the "phase-in" period ended on January 15, 2022, the BOP awarded Petitioner 365 days of earned time credits resulting in his release from custody well before that date. Moreover, although the Director of the Bureau of Prisons may transfer an inmate to begin a term of supervised release at an earlier date, that date may not exceed 12 months based on application of time credits under § 3632. *See* 18 U.S.C. §3624(g)(3); 28 C.F.R. § 523.44(d).[7] The 365 days of federal time credit awarded Petitioner resulting in a change of his projected release date of April 9, 2022, to

---

[6] *See* First Step Act of 2018, Risk and Needs Assessment System (called the Prisoner Assessment Tool Targeting Estimated Risk and Needs or the "PATTERN"); 18 U.S.C. § 3632.

[7] 28 C.F.R. § 523.44(d)(3) provides that: "[t]he Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
   …
   (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred."

April 9, 2021, suggests he not only received the maximum number of FSA credits allowed but reflects that those credits were awarded prior to finalization of the procedures regarding the earning and application of federal time credits authorized under the FSA.

### D.   Application of FSA Credits to Supervised Release Term

Petitioner requests that unused or outstanding time credits be applied to shorten the period of his supervised release. Doc. 1 at 9. Under 18 U.S.C. § 3632(d)(4)(A), eligible prisoners may earn time credits for participation in "evidence-based recidivism reduction programming or productive activities." Application of these earned time credits occurs when the prisoner's credits are "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Pursuant to 18 U.S.C. § 3632(d)(4)(A) & (C) earned time credits "shall be applied toward time in prerelease custody or supervised release." Prerelease custody consists of either home confinement or placement at a residential reentry center. *See* 18 U.S.C. § 3624(g)(2)(A)-(B). If a prisoner's sentence includes a term of supervised release, the BOP may also "transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [the earned] time credits ..." 18 U.S.C. § 3624(g)(3).

The language of 18 U.S.C. § 3632(d)(4)(C)—that application of time credits earned under § 3632(d)(4)(A) "shall be applied toward time in prelease custody or supervised release"—does not amount to a mandate requiring an order that an inmate's supervised release term be reduced by any outstanding or additional unapplied FSA time credits as there is no authority for granting such relief found in the applicable statutes and regulations. As explained, under 18 U.S.C. § 3624(g)(3), if, as a part of a prisoner's sentence, a

sentencing court has included a term of supervised release under 18 U.S.C. § 3583, FSA credits may be used to begin the prisoner's supervised release term early. The statute, however, has no provision for reducing the length of the term of supervised release. This interpretation of § 3624(g)(3) regarding application of FSA credits is in accord with Supreme Court precedent holding that the length of a term of supervised release cannot be reduced "by reason of excess time served in prison." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The *Johnson* Court explained that "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* at 59.  *See also United States v. Peters*, 856 F. App'x. 230, 233 (11th Cir. 2021) (quoting *Mont v. United States*, 587 U.S. ___, 139 S.Ct. 1826, 1833 (2019) ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release because [s]upervised release has no statutory function until confinement ends.").

In *United States v. Calabrese*, No. 1:11-CR-437, 2023 WL 1969753 (N.D. Ohio Feb. 13, 2023), the court considered the movant's request to apply his earned FSA credits to reduce his supervised release term. After a review of the pertinent statutes, the court determined that § 3632(d)(4)(C) "allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date" but "does not allow a prisoner to reduce the imposed length of supervised release." *Id.* at *3 (citing *Harrison v. Fed. Bureau of Prisons*, No. CV 22-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022). In reaching its conclusion, the court in *Calabrese* considered the use of the word "toward" in § 3632(d)(4)(C), *i.e.*, that earned time credits should be applied *toward* a term

11

of supervised release, and determined that use of this word "means that credits can be applied to bring 'time in prerelease custody or supervised release' closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening. Black's Law Dictionary (11th ed. 2019) (defining 'toward,' in relevant part, as 'in the direction of; on a course or line leading to (some place or something)')."[8] *Id.* at *2. Other courts to consider this issue have reached the same conclusion. *See e.g., Harrison*, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022) (finding that ["b]ased on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release."); *Defoy v. McCullough*, 393 F.3d 439, 442 n. 3 (3d Cir. 2005) (noting that a term of supervised release cannot be shortened due to excess incarceration); *United States v. Scriven,* 5:16-CR-174-IBO, 2023 WL 5811250 (E.D. N.C., September 7, 2023) (quotation marks and citation omitted) ("[A] defendant is not entitled to apply his additional [Fair Sentencing Act] time credits to reduce his term of supervised release because the statute does not allow it."); *Berry v. Gabby*, 4:23CV121/LAC/MAL, 2023 WL 6798869 (N.D. Fla. Sept. 15, 2023), *report and recommendation adopted*, No. 4:23CV121-MW/MAL,

---

[8] Notably, in *Dyer v. Fulgham*, No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022), the court concluded that "the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release." However, as discussed in the Recommendation, there is little consensus among courts for the conclusion reached in *Dyer*. *See Shiflet v. Yates*, No. 2:22-cv-161-BSM-PSH, 2023 WL 2817333, at *3 (E.D. Ark. Feb. 9, 2023), *report and recommendation adopted*, No. 2:22-cv-161-BSM, 2023 WL 2813877 (E.D. Ark. Apr. 6, 2023) (finding that *Dyer* "is unpersuasive and should not be followed"); *Pillow v. Bureau of Prisons*, No. 4:22-cv-00713-PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022) (declining to follow *Dyer*).

2023 WL 6794978 (N.D. Fla. Oct. 13, 2023) (citations omitted) (finding that "[b]ased on the plain text of 18 U.S.C. § 3624(g)(3), FSA credits cannot be used to shorten a term of supervised release."); *Sila v. Warden*, EDCV221632RSWLAS, 2023 WL 2504476, *2 (C.D. Cal. Feb. 13, 2023), *report and recommendation adopted*, No. EDCV2201632RSWLAS, 2023 WL 2504989 (C.D. Cal. Mar. 13, 2023) (finding that "[t]he First Step Act requires the BOP to transfer inmates to prerelease custody or supervised release when such inmates become eligible based on earned time credits under the Act …, but it does not provide for a reduction of supervised release terms, and the BOP is not authorized to reduce such terms."); *see also Goggans v. Jamison*, No. 1:23-CV-03645-GHW, 2023 WL 7389136, at *2 (S.D.N.Y. Oct. 13, 2023); *Goldblatt v. Ortiz*, No. CV 20-19987 (NLH), 2022 WL 1639007, at *2 (D.N.J. May 24, 2022); *Zimmer v. Marske*, No. 21-CV-284-JDP, 2022 WL 4016623, at *1 (W.D. Wis. Sept. 2, 2022).

Like numerous courts to consider the issue, the Court finds no authority on which to grant the relief sought by Petitioner. Even if Petitioner could demonstrate entitlement to any additional or outstanding FSA credits, based on the controlling statutes and federal regulations, those credits could not be: (1) used to shorten his term of supervised release; (2) applied retroactively to shorten the period of his supervised release; or (3) used to shorten the period of any future imprisonment Petitioner may have to serve for violating a condition of release. *See* 28 C.F.R. § 2.35(b).[9] Therefore, Petitioner's request to have

---

[9] 28 C.F.R. § 2.35(b) provides:

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a

13

unused FSA credits applied to his term of supervised release is due to be denied as the Court finds no authority on which it may grant the requested relief.

## V. CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS that the 28 U.S.C. § 2241 Petition for Habeas Corpus relief filed by Petitioner Tagget Williams regarding the amount of FSA credits awarded be DENIED without prejudice for failure to exhaust administrative remedies and Petitioner's remaining claims be DENIED and DISMISSED with prejudice.

The Clerk is DIRECTED to substitute the Wesley Fitch, United States Probation Officer for the Northern District of Georgia as the Respondent.[10]

It is further ORDERED that by **February 14, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

---

> prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

[10] Respondent asserts that Wesley Fitch, United States Probation Officer for the Northern District of Georgia, is the proper respondent as he currently has supervision over Petitioner's case. Doc. 21 at 7–8. *See* 18 U.S.C. § 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment shall be released ... to the supervision of a probation officer[.]"); *Rumsfeld*, 542 U.S. at 443.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3–1. *See Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 31st day of January 2024.

    /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE